UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DAVID Q.,[1]

                       Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

                     Defendant.
_____

<u>DECISION & ORDER</u>

20-CV-1207MWP

## <u>PRELIMINARY STATEMENT</u>

Plaintiff David Q. ("plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for Disability Income Benefits ("DIB"). Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 29, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned. (Docket # 12).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 9, 10). For the reasons set forth below, I hereby vacate the decision of the Commissioner and remand this claim for further administrative proceedings consistent with this decision.

---

[1] Pursuant to the November 18, 2020 Standing Order of the United States District Court for the Western District of New York regarding identification of non-governmental parties in social security opinions, the plaintiff in this matter will be identified and referenced solely by first name and last initial.

**DISCUSSION**

I.   **Standard of Review**

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards.  *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted).  Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence."  *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive").  Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  To the extent

2

they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1)    whether the claimant is currently engaged in substantial gainful activity;

(2)    if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3)    if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations (the "Listings");

(4)    if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform [his/her] past work; and

(5)    if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467.

"The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t

step five the burden shifts to the Commissioner to 'show there is other gainful work in the

national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383

(quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).


## II.   __The ALJ's Decision__

In his decision, the ALJ followed the required five-step analysis for evaluating

disability claims.  Under step one of the process, the ALJ found that plaintiff had not engaged in

substantial gainful activity since January 1, 2016, the alleged onset date.  (Tr. 68).[2]  At step two,

the ALJ concluded that plaintiff had the following severe impairments: degenerative disc

disease; chronic kidney disease, mild; obesity; and status post cerebral vascular accident

("CVA").  (*Id.*).  The ALJ also found that plaintiff had been diagnosed with hypertension, high

cholesterol, and major depressive disorder, but that these impairments were nonsevere.  (Tr. 69).

At step three, the ALJ determined that plaintiff did not have an impairment (or combination of

impairments) that met or medically equaled one of the listed impairments in the Listings.

(Tr. 71-72).

The ALJ concluded that plaintiff retained the RFC to perform light work but with

certain exertional limitations.  (Tr. 72).  Specifically, the ALJ found that plaintiff could only

occasionally stoop, crouch, crawl, and climb ramps, stairs, ladders, ropes, and scaffolds.  (*Id.*).

At step four, the ALJ determined that plaintiff could perform his past relevant work as a cost

estimator and project manager "as actually and generally performed," finding that "[t]his work

---

[2]   The administrative transcript (Docket # 7) shall be referred to as "Tr. ___," and references thereto utilize the internal Bates-stamped pagination assigned by the parties.

does not require the performance of work-related activities precluded by [plaintiff's] [RFC]."

(Tr. 76).  The ALJ thus concluded that plaintiff was not disabled and did not proceed to step five.

(Tr. 76-77).


III.   <u>Plaintiff's Contentions</u>

Plaintiff contends that the ALJ's determination that he is not disabled is not

supported by substantial evidence and is the product of legal error.  (Docket # 9-1).  Specifically,

plaintiff maintains that the physical portion of the ALJ's RFC assessment conflicts with certain

of the limitations opined by consultative examiner Harbinder Toor ("Toor"), MD, and that the

ALJ improperly weighed Dr. Toor's opinion.  (*Id.* at 10-15).  Next, plaintiff argues that the ALJ

erroneously considered his diagnosed major depressive disorder, both at step two and in the RFC

analysis.  (*Id.* at 16-21).  Finally, plaintiff asserts that the Appeals Council improperly rejected

medical records post-dating the ALJ's decision.  (*Id.* at 21-24).


IV.   <u>Analysis</u>

A.   <u>The ALJ's Consideration of Plaintiff's Mental Health Impairment</u>

I turn first to the ALJ's consideration of plaintiff's mental health impairment

because I find that it constitutes error warranting remand.  In maintaining that the ALJ

erroneously analyzed his diagnosed major depressive disorder, plaintiff advances two arguments.

First, he maintains that the ALJ erred in finding this impairment to be nonsevere at step two.

(Docket # 9-1 at 16-19).  In plaintiff's view, the record – particularly the April 26, 2017 opinion

of consultative psychologist Adam Brownfeld ("Brownfeld"), PhD[3] – supports a finding that his

_____

[3]  Specifically, Dr. Brownfeld's April 2017 psychiatric evaluation concluded that plaintiff had "[d]epressive disorder, due to general medical condition" (in addition to the self-reported medical diagnoses of stroke, back pain,

depression constituted a severe impairment.  (*Id.*).  Second, plaintiff asserts that, regardless of the ALJ's severity determination, the ALJ erred by failing to account for plaintiff's major depressive disorder in the RFC analysis.  (*Id.* at 19-21).  I find that remand is warranted based on the second of these arguments.

At step two of the sequential analysis, the ALJ must determine whether the claimant has a "severe impairment" that "significantly limits [claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(a)(4)(ii), (c).  It is the claimant's burden to present evidence demonstrating severity at step two.  *See Briggs v. Astrue*, 2011 WL 2669476, *3 (N.D.N.Y.), *report and recommendation adopted by*, 2011 WL 2669463 (N.D.N.Y. 2011).  "An impairment or combination of impairments is 'not severe' when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have at most a minimal effect on an individual's ability to perform basic work activities." *Jeffords v. Astrue*, 2012 WL 3860800, *3 (W.D.N.Y. 2012) (citation omitted); *see also Schifano v. Astrue*, 2013 WL 2898058, *3 (W.D.N.Y. 2013) ("[a]n impairment is severe if it causes more than a *de minimis* limitation to a claimant's physical or mental ability to do basic work activities").

Moreover, where the claimant's alleged disability includes mental components, at steps two and three the ALJ must also apply the so-called "special technique."  *See Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008); *see also* 20 C.F.R. §§ 404.1520a(b)-(e).  Specifically, the ALJ must rate the claimant's "degree of functional limitation resulting from" a medically

---

high blood pressure, and incontinence), which resulted in "mild[] limit[ations]" regarding plaintiff's ability to regulate emotions, control behavior, and maintain well-being, as well as "moderate[] limit[ations]" regarding plaintiff's ability to sustain concentration and perform a task at a consistent pace, sustain an ordinary routine and regular attendance at work, and apply complex directions and instructions.  (Tr. 407-408).

6

determinable mental impairment in "four broad functional areas": (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  20 C.F.R. §§ 404.1520a(b)-(c); *see also Lynn v. Colvin*, 2017 WL 743731, *2 (W.D.N.Y. 2017) (discussing former version of 20 C.F.R. § 404.1520a(c)(3)). "If and how the analysis proceeds from that point depends upon the degree of impairment found.  However, the ALJ must document his analysis, and his written decision must reflect application of the technique, and include a specific finding as to the degree of limitation in each of the four functional areas."  *Lynn v. Colvin*, 2017 WL 743731 at *2 (alterations and quotations omitted).

Here, the ALJ recognized at step two that plaintiff's major depressive disorder was a medically determinable impairment, but found that the condition was not severe because it "d[id] not cause more than minimal limitation in [plaintiff's] ability to perform basic mental work activities."  (Tr. 69; *see also* Tr. 71).  Applying the "special technique," the ALJ explained that plaintiff had only "mild" limitations in each of the four broad categories of mental functioning outlined above.  (Tr. 69, 71).  In reaching this conclusion, the ALJ observed that plaintiff's treatment record concerning his depression during the relevant time period was "very limited," and contained nothing demonstrating that plaintiff "treated at any Emergency or Urgent Care Unit for mental health symptoms," was "hospitalized, or received intensive outpatient care for mental health symptoms," or that he received "mental health treatment by any mental health provider."  (Tr. 70).  The ALJ further supported his step-two analysis by discussing the treatment notes and functional capacity questionnaire from plaintiff's primary care physician, Celeste Stahl Balaban ("Balaban"), DO, Brownfeld's psychiatric consultative examination, and the opinion of non-examining state-agency review consultant L. Hoffman ("Hoffman"), PhD.  (Tr. 70-71).

After purportedly evaluating this evidence "in the light most beneficial to [plaintiff], and giving [plaintiff] the benefit of any doubt," the ALJ determined that there was insufficient "objective, clinical or medical opinion evidence to adequately support a finding that [plaintiff's major depressive disorder] . . . caused more than minimal work related limitation" or that plaintiff's depression "resulted in functional loss." (Tr. 71). Accordingly, because the impairment "caused no more than 'mild' limitation," the ALJ found plaintiff's depression to be nonsevere. (*Id.* (citation omitted)).

The ALJ concluded his step-two analysis by stating that the "limitations identified in the 'paragraph B' criteria are not a[n] [RFC] assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." (*Id.*). He observed that "[t]he mental [RFC] assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B" and that his RFC "assessment reflects the degree of limitation [he] . . . found in the 'paragraph B' mental function analysis." (*Id.* (citing Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996))).

As stated above, plaintiff argues that the ALJ's step-two severity determination concerning his mental health impairment was not supported by substantial evidence. (Docket # 9-1 at 16-19). The Commissioner counters that the ALJ's step-two finding was supported by substantial evidence in the record and that plaintiff ultimately "failed to meet his burden in showing any functional limitations resulting from his alleged depression or any mental impairments." (Docket # 10-1 at 12-15). I do not reach this particular challenge, however, because the other issue raised by plaintiff (which is not directly addressed by the Commissioner

(*see generally id.*)) – that the ALJ failed to analyze the effect of plaintiff's mental health impairment in determining his RFC – warrants remand.

An individual's RFC is his "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184 at \*2).  In making an RFC assessment, the ALJ should consider "a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)).

In addition, regardless of whether an impairment qualifies as severe or nonsevere at step two, an ALJ still must consider the impact of all of a claimant's medically determinable impairments in assessing the RFC.  *See* 20 C.F.R. § 404.1545(a)(2) ("[the Commissioner] will consider all of [a claimant's] medically determinable impairments of which [the Commissioner] [is] aware, including [a claimant's] medically determinable impairments that are not 'severe' . . . when [the Commissioner] assess[es] [a claimant's] [RFC]"); *see also Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012) (summary order) ("[an] RFC determination must account for limitations imposed by both severe and nonsevere impairments"); *Jatava L. v. Comm'r of Soc. Sec.*, 2021 WL 4452265, \*5 (W.D.N.Y. 2021) ("[r]egulations and case law are clear that an RFC determination must account for limitations imposed by both [severe] and non-severe impairments"); *Laura Anne H. v. Saul*, 2021 WL 4440345, \*9 (N.D.N.Y. 2021) ("[i]t is axiomatic that the ALJ is required to consider a plaintiff's mental impairments, even if not severe, in formulating the RFC") (citation omitted).  As a result, "[a]n error at step two – either a failure to make a severity determination regarding an impairment, or an erroneous determination

that an impairment is not severe – can be harmless if the ALJ continues the analysis and considers all impairments in his RFC determination." *Pacholski v. Berryhill*, 2018 WL 3853388, *3 (W.D.N.Y. 2018) (brackets and citation omitted); *see also Jatava L. v. Comm'r of Soc. Sec.*, 2021 WL 4452265 at *4 ("[a]n error at step two may be harmless if the ALJ identifies other severe impairments at step two, proceeds through the remainder of the sequential evaluation process, *and specifically considers* the 'non-severe impairment' during the subsequent steps of the process") (emphasis supplied).  However, where "the ALJ fails to account for the claimant's nonsevere impairments when determining [the claimant's] RFC[,] . . . [r]emand is required." *Pacholski v. Berryhill*, 2018 WL 3853388 at *3; *see also Schmidt v. Colvin*, 2016 WL 4435218, *13 (E.D.N.Y. 2016) ("[w]here an ALJ fails to account for any functional limitations associated with the non-severe impairments in determining the claimant's RFC, a court must remand for further administrative proceedings") (brackets and quotations omitted).

Even if the ALJ's step-two severity determination were supported by substantial evidence – a determination I do not reach – I find that the ALJ still committed error by failing entirely to address or account for any functional limitations associated with plaintiff's major depressive disorder in the RFC assessment.  The ALJ's RFC analysis, while noting that depression was among the several diagnoses Dr. Balaban assigned plaintiff in her April 2019 physical RFC questionnaire (*see* Tr. 74 (referencing Tr. 508)), did not discuss or evaluate the extent to which that impairment affected plaintiff's "ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," *Melville v. Apfel*, 198 F.3d at 52, and the RFC likewise did not contain any nonexertional, mental limitations associated with that impairment.  (*See generally* Tr. 72-76).  Such omission constitutes error because the ALJ found

plaintiff's depression to be a nonsevere medically determinable impairment and was therefore required to consider the impairment in the RFC analysis. *See* 20 C.F.R. § 404.1545(a)(2).

Moreover, the ALJ did not satisfy this requirement through application of the "special technique" at step two. Although the ALJ discussed evidence relevant to plaintiff's mental impairment at that stage of the sequential process, including treatment notes and opinions from examining and non-examining medical sources, and found that this evidence demonstrated no more than "mild" associated functional limitations (*see* Tr. 69-71), it is well-established that the step-two analysis is "analytically distinct" from the RFC analysis, and the ALJ's discussion of evidence and functional limitations relating to plaintiff's depression at step two did not relieve him of the obligation to further assess plaintiff's mental health impairment in the RFC portion of his decision. *Golden v. Colvin*, 2013 WL 5278743, *3-4 (N.D.N.Y. 2013) (ALJ erred where his decision "d[id] not reflect that he engaged in *any* further assessment of functional effects of [claimant's] mental impairments beyond determinations previously made at [s]teps 2 and 3 under the 'special technique'"; while the "special technique" applied at steps two and three may "relate[] to" the ALJ's mental RFC analysis, it is "entirely separate and analytically distinct from[] a *subsequent* determination of mental *residual functional capacity*[;] [s]tep 2 and [s]tep 3 findings regarding functional limitations stemming from mental impairments, while pertinent, do not suffice as a mental residual functional capacity determination") (emphasis in original); *see also Jatava L.*, 2021 WL 4452265 at *5 n.4 (rejecting argument that the ALJ "properly evaluated plaintiff's anxiety and depression by following the special technique for evaluating mental impairments at step two of the regulations[;] [t]o the contrary, the Social Security Regulations stress that the 'special technique' . . . is not an RFC assessment, and further, the mental RFC assessment used at steps four and five 'requires a more detai[led] assessment'") (citations

omitted); *Cintron v. Berryhill*, 2018 WL 1229731, *10 (S.D.N.Y. 2018) ("[a]t step two, the ALJ found that [claimant's] mental conditions were nonsevere[;] . . . [h]owever, it is not clear from the ALJ's analysis that she separately considered [evidence discussed at step two relating to claimant's mental impairments] in determining [claimant's] RFC, as she was required to do[;] . . . [i]nstead, the ALJ's analysis seems to commingle the step two determination of severity with the determination of [claimant's] RFC[;] . . . [t]hus, the [c]ourt cannot determine whether her determination of [claimant's] RFC was proper").

        Nor does the fact that the ALJ ostensibly recognized this distinction otherwise cure his flawed RFC assessment.  (*See* Tr. 71 (ALJ observed at step two that application of the "special technique" was "not a[n] [RFC] assessment" and that his RFC "assessment reflect[ed] the degree of limitation [he] . . . found in the [step-two] 'paragraph B' mental function analysis")).  Indeed, aside from a passing reference to plaintiff's diagnosed depression, the RFC portion of the ALJ's decision contained no discussion regarding whether plaintiff's depression caused functional limitations in the work setting, suggesting that the ALJ's statement at step two amounted to recitation of boilerplate language.  *See*, *e.g.*, *Mandy C. v. Saul*, 2020 WL 1245348, *6 (N.D.N.Y. 2020) ("given the absence of any mental restrictions or limitations in the RFC, the ALJ's reference to the proper standard set forth in the regulations, without more, is insufficient lip service and indicates the ALJ simply relied on his finding of non-severity as a substitute for a proper RFC analysis") (brackets and quotations omitted); *Davis v. Saul*, 2019 WL 6682159, *4 (W.D.N.Y. 2019) ("other than baldly asserting that [claimant's] RFC 'reflects the degree of limitation [the ALJ] found in the . . . mental function analysis,' the ALJ never made that 'more detailed assessment' [in the RFC analysis] – at least not in a way that permits review by this [c]ourt") (citation omitted); *Zochios v. Berryhill*, 2018 WL 1835451, *4 (W.D.N.Y. 2018)

("[r]egardless of whether the ALJ properly classified [claimant's] mental impairments as nonsevere, remand is required because he did not consider those nonsevere impairments when assessing her RFC[;] . . . [t]he ALJ's step two conclusion includes boilerplate language indicating that the RFC assessment 'reflects the degree of limitation [he] found in the . . . mental function analysis,' however, the ALJ's RFC analysis does not mention [claimant's] anxiety or bipolar disorders and the RFC determination lacks any related mental limitations").

   In addition, I cannot characterize as harmless the ALJ's error in the RFC analysis of failing to address plaintiff's depression or determine whether it would give rise to associated work-related limitations, particularly given that Dr. Brownfeld – the only examining source to opine on plaintiff's mental functional capacity[4] – assessed plaintiff with various mild and moderate mental functional limitations. (*See* Tr. 405-408). Indeed, Dr. Brownfeld's opined mild and moderate mental functional limitations appear nowhere in the ALJ's decision – at step two or elsewhere – despite the fact that the ALJ found Dr. Brownfeld's opinion to be "persuasive" and assigned it "significant probative value." (*See* Tr. 70).

   Moreover, this is not a case in which the ALJ found that plaintiff's depression caused *no* associated functional limitations at step two or found that plaintiff had a nonsevere mental impairment but nonetheless specifically accounted for associated limitations in the RFC assessment. Instead, the ALJ here found that plaintiff's depression was a medically determinable impairment, albeit nonsevere, which nonetheless caused "mild" limitations in each of the four broad categories of functioning. (*See* Tr. 69, 71). Yet, the ALJ completely failed to analyze the

---

[4] Even though Dr. Balaban's April 2019 RFC questionnaire indicated that plaintiff had been diagnosed with depression, the probative value of that form relating to plaintiff's mental functional capacity is not clear. The form is explicitly designated as a "physical" RFC questionnaire – not a mental RFC assessment. (Tr. 508). Moreover, although Dr. Balaban stated that plaintiff was noncompliant with specialist follow-ups and "sometimes" with medications for his depression, she explicitly noted that she was not a psychiatrist and that her medical practice "d[id] not do functional capacity exams." (Tr. 509).

extent to which these mild limitations affected the RFC determination.  (*See* Tr. 72-76).  Where, as here, "the ALJ 'finds "mild" restrictions' resulting from a nonsevere impairment, the ALJ must [still] address those restrictions as part of his RFC analysis." *MacDonald v. Comm'r of Soc. Sec.*, 2019 WL 3067275, *3 (W.D.N.Y. 2019) (brackets and citation omitted).  *See*, *e.g.*, *Jatava L.*, 2021 WL 4452265 at *5 ("even if the record did support a step-two finding that plaintiff's mental impairments were non-severe, the ALJ was still obligated to consider those impairments in formulating the RFC[;] . . . [d]espite giving significant weight to [consultative examiner's] finding that plaintiff had mild mental health limitations in two areas of functioning, the ALJ did not include any mental limitations in the RFC nor did he explain the absence of such limitations[;] [a]t a minimum, the ALJ's reasoning as to why he did not include any mental limitations in the RFC should have been stated in his decision[;] [a]ccordingly, remand is required"); *Laura Anne H. v. Saul*, 2021 WL 4440345 at *10 (rejecting argument that ALJ's failure to discuss nonsevere mental impairments in the RFC analysis was harmless; "the ALJ did not find [p]laintiff's mental related limitations 'to be non-existent or *de minimis*,' such that any error resulting from his failure to address them in his RFC analysis would be harmless[;] . . . [r]ather, as noted, the ALJ determined at step two that [p]laintiff had 'mild' limitations in two of the four functional areas[;] . . . [b]ut the ALJ did not address those mild limitations when formulating [p]laintiff's RFC").

In sum, regardless of whether the ALJ's step-two severity determination regarding plaintiff's major depressive disorder was supported by substantial evidence, the record does not demonstrate that the ALJ properly considered the impact of that impairment in evaluating plaintiff's RFC, as he was required to do.[5]  This error requires remand.  *See*, *e.g.*,

---

[5]  Of course, the ALJ need not necessarily find on remand that plaintiff has functional work-related limitations associated with his depression, but must specifically discuss any such findings (or lack thereof) in his

*Parker-Grose v. Astrue*, 462 F. App'x at 18 ("even if this [c]ourt concluded that substantial

evidence supports the ALJ's finding that [claimant's] mental impairment was nonsevere, it

would still be necessary to remand this case for further consideration because the ALJ failed to

account [for claimant's] mental limitations when determining her RFC[;] . . . [i]n this case, after

finding that [claimant's depression was nonsevere,] . . . the ALJ determined [claimant's] RFC

without accounting for any of the limitations arising from her mental impairment that were

established by substantial evidence in the record[;] [t]hus, the ALJ committed legal error");

*MacDonald v. Comm'r of Soc. Sec.*, 2019 WL 3067275 at *4 ("[i]f [claimant's] RFC had

included some limitations reflecting the [nonsevere] mild mental impairments that the [ALJ]

found at step two, this [c]ourt might conclude that any error [at step two] was harmless[;] [b]ut

because her RFC includes no mental restrictions or limitations whatsoever[,] . . . this [c]ourt

cannot be certain that the ALJ actually considered her mental issues when addressing her RFC[;]

[t]herefore, even if substantial evidence supports the ALJ's determination that [claimant's]

mental impairment was not severe at step two, remand is still necessary for further consideration

because the ALJ failed to account [for claimant's] mental limitations when determining her

RFC") (quotations omitted); *Pacholski*, 2018 WL 3853388 at *3 ("[r]egardless of whether the

ALJ properly classified these impairments as nonsevere, remand is required because he did not

consider them when assessing [claimant's] RFC").  On remand, the ALJ should consider

addressing the mild and moderate mental functional limitations opined by Dr. Brownfeld and

---

RFC assessment.  *See, e.g.*, *Laura Anne H.*, 2021 WL 4440345 at *11 ("[o]n remand, the ALJ should consider all of [p]laintiff's impairments in the RFC determination regardless of their severity[;] [t]he ALJ may find that [p]laintiff's mental impairments are inconsequential and, thus, reject the need to incorporate mental limitations into the RFC – but he must explain his reasoning for doing so[;] [t]he ALJ should continue through steps four and five of the sequential evaluation as necessary and determine whether [p]laintiff has the RFC to perform the requirements of her past relevant work or any other work").

whether they affect his ability to perform his past relevant work identified by the ALJ at step four (*see* Tr. 76) or any other work.

### B.   Plaintiff's Remaining Contentions

As mentioned above, plaintiff raises other contentions related to the physical portion of the ALJ's RFC determination and the Appeals Council's handling of evidence submitted after the date of the ALJ's decision.  (Docket # 9-1 at 10-15, 21-24).  Because I find that remand is warranted due to the ALJ's erroneous consideration of plaintiff's mental impairment in the RFC assessment, I decline to address plaintiff's remaining contentions.  *See*, *e.g.*, *James M. v. Comm'r of Soc. Sec.*, 2020 WL 7121462, *7 (W.D.N.Y. 2020) ("[w]ith the remand ordered for [c]laimant's mental RFC, however, this [c]ourt need not address his physical RFC[;] [t]he ALJ may revisit this physical RFC finding during the remand on the mental RFC"); *Kuhaneck v. Comm'r of Soc. Sec.*, 357 F. Supp. 3d 241, 245, 248-49 (W.D.N.Y. 2019) (declining to address plaintiff's contention that the Appeals Council "failed to properly address new evidence" where remand was appropriate for reevaluation of opinion evidence); *Zochios v. Berryhill*, 2018 WL 1835451 at *3 n.3 ("[plaintiff] advances another argument that she believes requires reversal of the Commissioner's decision[;] . . . [h]owever, because the [c]ourt disposes of this matter based on the ALJ's failure to properly consider her nonsevere impairments in the RFC analysis, that argument need not be reached").  I nonetheless urge the ALJ on remand to consider plaintiff's contention relating to the physical portion of the RFC determination and ensure that the determination is adequately explained and supported by substantial evidence.

## <u>CONCLUSION</u>

For the reasons stated above, the Commissioner's motion for judgment on the

pleadings **(Docket # 10)** is **DENIED**, and plaintiff's motion for judgment on the pleadings

**(Docket # 9)** is **GRANTED** to the extent that the Commissioner's decision is reversed, and this

case is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further

administrative proceedings consistent with this decision.

**IT IS SO ORDERED.**

_s/Marian W. Payson_
MARIAN W. PAYSON
United States Magistrate Judge

Dated:  Rochester, New York
       March 17, 2022